UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:05CR14-EHJ

**UNITED STATES OF AMERICA**

v.

**SEAN STEVEN COPPER**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motions filed by the defendant: 1) Motion to Dismiss under Rule 12(b) (Dkt. # 12); 2) Motion to Dismiss Due to Improper Venue (Dkt. # 13); 3) Motion for Change of Venue/Transfer (Dkt. # 14); 4) Motion to Suppress (Dkt. # 15); and 5) Motion for Bill of Particulars (Dkt. #16). The United States has filed a response to the Motion to Suppress (Dkt. 22) and a collective response to the remaining pending motions (Dkt. #21), to which defendant has replied (Dkt. #). As the Court finds that these matters may be adequately determined on the parties' submissions, requests for oral argument are denied.

These motions arise from defendant's indictment in the Western District of Kentucky for conspiracy to possess with intent to distribute 500 or more grams of cocaine. The Court will address each of the defendant's Motions separately below.

1.   Rule 12(b) Motion to Dismiss

Defendant seeks dismissal of the indictment for conspiracy, stating that there is no allegation of a conspiracy between the defendant and other non-government individuals to traffic in narcotics. As support for his position, he notes that he is the sole defendant in the two-count indictment, and that he cannot be found guilty of conspiracy with a government informant. However, the plain language of the indictment reveals that defendant was indicted for conspiracy "with other persons known and unknown to the Grand Jury" (Indictment, Count I, page 1). While it is true that a sole

defendant plus a government informant does not a conspiracy make, the government points out that the Indictment charges conspiracy between February and May 19, 2005, and the government informant did not become an informant until April 29, 2005 (leaving the period from February until April 29, 2005 in which the defendant could have conspired with the informant). The government argues that even after the informant dropped from the conspiracy on April 29, 2005, the defendant maintained a source of supply which would logically require a continuing conspiracy with at least one other individual.

Under these circumstances, the Court finds that the charge of conspiracy with intent to possess and distribute cocaine is proper, and defendant's Rule 12(b) Motion to Dismiss will be DENIED.

2.  <u>Motion to Dismiss Due to Improper Venue</u>

Defendant moves to dismiss the indictment in the Western District of Kentucky pursuant to Fed.R.Crim.P. 18, arguing that the defendant's alleged criminal acts occurred in Tennessee, the locus of the criminal activity was in Tennessee, the suitability of accurate fact finding is found in Tennessee, and the defendant is the sole defendant in a two-count indictment for conspiracy to possess and distribute cocaine. The Court takes judicial notice that the defendant is a resident of South Fulton, Tennessee, a town situated along the Kentucky/Tennessee border.

The government concedes that the drug sales between the defendant and the individual who later became an informant occurred in South Fulton, Tennessee. Nonetheless, the government posits that all of the cocaine the individual purchased from defendant before the individual became an informant on April 29, 2005 was sold in Western Kentucky, primarily to supply a notorious crack-house in Cadiz, Kentucky. In addition, the government alleges that the defendant knew the

individual was traveling from Kentucky to purchase the drugs, was bringing money owed for drugs previously fronted to him and sold in Kentucky, and was transporting the drugs to their final destination in Western Kentucky.  Finally, the government urges that venue is proper in this district because the individual/government informant's overt acts in furtherance of the conspiracy (selling and transporting drugs purchased from defendant) were committed within this district.

In a drug conspiracy case, venue is proper in any district court where an overt act in furtherance of the conspiracy occurs, United States v. Crozier, 259 F.3d 503, 519 (6th Cir. 2001), and the government need only prove venue by a preponderance of the evidence, id.  Though the defendant himself may never have entered Kentucky to commit an overt act during the conspiracy, it is enough that a co-conspirator (such as the individual/informant) committed an overt act furthering the conspiracy within this district.  Furthermore, the individual/informant's participation in the conspiracy removes this case from the orbit of United States v. Williams, 274 F.3d 1079, 1084-85 (6th Cir. 2001), where the only evidence connecting a drug conspiracy to Michigan came from the statement of an undercover agent, who of course was not a co-conspirator and who knew the drugs in fact would never reach Michigan.  The present case is clearly distinguishable from Williams, and venue in the Western District of Kentucky is proper.  Defendant's Motion to Dismiss for Improper Venue will be DENIED.

3.      Motion to Transfer

Defendant urges the Court to transfer this case to the Western District of Tennessee, noting that the defendant and narcotics officers are located in Tennessee, and the search warrant was issued from Judge Thomas S. Anderson, magistrate for the Western District of Tennessee.  Defendant additionally points out that he lives and works in Obion County, Tennessee, and the officers

expected to testify against him are located in Obion and Madison Counties, Tennessee. In response, the government points out that the Western District of Kentucky in Paducah, Kentucky is some one hour closer for defendant than the Western District of Tennessee in Jackson, Tennessee, that some of the officers and witnesses are located in Kentucky, and that the case was indicted by a grand jury in Paducah, Kentucky.

It appears to the Court that there are factors that weigh favorably for either location. Under the circumstances, the case has already been indicted in the Western District of Kentucky, this Court has already spent significant time and resources on the case, the Paducah, Kentucky courthouse is approximately half the travel distance for defendant than the Western District of Tennessee at Jackson, Tennessee, and there may be equally as many officers and witnesses from this side of the border as there are from the Tennessee side. The Court has already deemed the Western District of Kentucky to be a proper venue for the drug conspiracy indictment, and declines to transfer the case to the Western District of Tennessee. Defendant's Motion to Transfer will be DENIED.

4.      <u>Motion to Suppress</u>

Defendant has filed a Motion to Suppress the evidence obtained as a result of the two search warrants issued by Judge Thomas in the Western District of Tennessee. One warrant was for the search of defendant's primary residence located at 4423 Country Club Road in South Fulton, Tennessee ("Country Club") and another residence owned by defendant at 303 Willow Drive in South Fulton, Tennessee ("Willow Drive") from which he allegedly conducted drug transactions. Defendant contends that the supporting affidavits for each warrant fail to state sufficient facts and circumstances to support a finding of probable cause to search either residence, that there was insufficient basis for the agent to rely upon the confidential source in obtaining the warrants, that

4

the confidential source lacks sufficient basis of knowledge regarding cocaine, the agent obtaining the warrant failed to give all pertinent and relevant information to the issuing magistrate, the information contained in the affidavit is hearsay from another agent, the search warrants were based upon stale information, the warrants were executed too late, and there was no information in the affidavits that would lead a reasonable officer to believe that contraband existed on either premises at the time of the warrants' execution.

Thus, the issue before this Court is whether the affidavits in support of the search warrants issued for search of both the Country Club and Willow Drive residences were factually sufficient for finding probable cause. The applicable standard for probable cause was set forth in Illinois v. Gates, 462 U.S. 213 (1983), in which the Supreme Court of the United States adopted a "totality of the circumstances" test for determining whether probable cause exists. The examining Court is to take into account probabilities and the "practical considerations of everyday life on which reasonable and prudent men, non legal technicians, act."

The search warrants at issue were each accompanied by supporting affidavits. The search warrant for the Country Club Road residence of defendant set forth primarily documentary items to be searched for at the residence, including books, receipts notes and papers relating to the drug trade, money or other monetary documentation regarding drug sales, documentation evidencing drug transactions, documents reflecting names and addresses of co-conspirators, computer information, and firearms and/or packaging and weighing materials (such as plastic bags, scales, etc.). The search warrant for the Willow Drive residence was specifically for controlled substances as well as the documentary items sought from the Country Club Road residence.

The Court finds the case of U.S. v. Newton, 389 F.3d 631 (6th Cir. 2004) (vacated and remanded on other grounds, 126 S.Ct. 280) to be analogous to the case at bar. In Newton, a search warrant was issued based upon information from an informant who admitted to making numerous previous deliveries of marijuana to Newton. Police later corroborated the information, and a controlled delivery was executed which occurred exactly as the informant had described that it would. Thereafter, police submitted affidavits for search warrants for four residences, each of which had been listed as Newton's residence. The affidavit also included a statement from a reliable informant that Newton was a drug dealer, but without reciting any facts regarding the drug dealing. Newton was convicted, and appealed the denial of his suppression motion.

> The Sixth Circuit affirmed the district court's denial of the motion to suppress below, noting:

> The judge had strong reason to suspect that Newton was a drug dealer with continuing and ongoing operations based on the detailed information supplied by [the informant]. In the case of drug dealers, evidence is likely to be found where the drug dealers live. Additionally, with continuing criminal operations, any issue of staleness, or the lack of a direct known link between the criminal activity and residence becomes minimal . . . . Given that probable cause generally exists to search for the fruits and instrumentalities of criminal activity at the residence of a drug dealer with continual and ongoing operations, the judge's decisions as to these locales cannot be said to be arbitrary.

389 F.3d at 635-636.

The affidavits for both residences in this case provided detailed information regarding the defendant's alleged drug enterprise: 1) the informant has known the defendant for eleven years, and first bought cocaine from him in 1994; 2) the informant and defendant reestablished contact in February 2005 when the defendant began to sell cocaine to the informant again; 3) the affidavits identify specifics about the defendant's drug business – that his residence is on Country Club but he uses the Willow Drive address to conduct his transactions, that the informant has met the

6

defendant at his residence but all transactions take place at Willow Drive; 4) the informant has completed five or six cocaine transactions with the defendant at the Willow Drive address over the past four months, and the quantities were for either an eighth or a quarter kilo of cocaine (noting prices for each); 5) the affidavit indicates the defendant told the informant he receives two to three kilos of cocaine every couple of days from a supplier in Memphis; 6) the controlled purchase occurred exactly as the informant said it would; and 7) the affidavits include information that connects the defendant with both residential addresses.

Given these representations, it is reasonable that the magistrate had strong suspicion that the defendant was a drug dealer with continuing and ongoing operations, and the finding of probable cause should be given great deference. Finally, under U.S. v. Allen, 211 F.3d 970, 974 (6th Cir. 2000), the affidavits in this case were sufficient to establish probable cause. Assessment of probable cause is a highly fact-specific inquiry, and a supporting affidavit is to be judged, "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." The informant in this case was known to police, gave an account that was first-hand, recent and specific as to the details of the drug transactions with the defendant, the informant's statements pertaining to drug transactions with the defendant were against penal interest, and the statements were corroborated through the controlled buy which happened exactly as described by the informant.

Taken as a whole, the evidence presented to the issuing judge in this case was adequate to find probable cause, and defendant's Motion to Suppress will be DENIED.

5. Motion for Bill of Particulars

Defendant has moved, pursuant to Rule 7(f), F.R.Cr.P., for a bill of particulars seeking the following information: 1) how he is alleged to have conspired with others to possess with intent to

distribute 500 grams or more of cocaine; 2) the identity of each individual with whom he allegedly conspired; 3) the overt act he committed to initiate the alleged conspiracy, including when it was done and who knew about it; 4) any and all facts the government intends to rely upon to prove conspiracy; 5) what physical evidence seized by the government constitutes the purpose of the charge alleged in each count of the Indictment; and 6) the times, dates and places in which the defendant is alleged to have assisted and/or participated in the crimes alleged in the Indictment.

The purpose of a motion for a bill of particulars, which is addressed to the sound discretion of the Court, is to provide a defendant with specifics omitted from the indictment which are necessary for a preparation of his defense and the avoidance of surprise at trial. 1 Wright, <u>Federal Practice and Procedure: Criminal §129</u>. The test in passing on a motion for a bill of particulars is whether the defendant has enough information about the offense charged to enable him to prepare adequately for trial, <u>Id</u>. However, as recently noted in the Sixth Circuit, a bill of particulars is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial. <u>U.S. v. Crayton</u>, 357 F.3d 560, 568 (6th Cir. 2004), certiorari denied 124 S.Ct. 2857, __ U.S. __, 159 L.Ed.2d 279. The government is not required to furnish the name[s] of all other co-conspirators in the bill of particulars, <u>Id</u>.

A Reciprocal Order of Discovery was entered in this case on July 27, 2005, which allows for discovery pursuant to Fed.R.Cr.P. 16 and 18 U.S.C. §3500, the Jencks Act. This discovery information, coupled with the indictment which recites with particularity the charges against which the defendant will have to defend, is sufficient to allow the defendant to prepare for trial. Thus, his Motion for a Bill of Particulars will be DENIED.

Accordingly,

IT IS ORDERED that defendants' requests for oral argument, defendant's motions to dismiss (Dkt. Nos. 12 and 13), defendant's motion for change of venue (Dkt. No. 14), defendant's motion to suppress (Dkt. No. 15), and defendant's motion for a bill of particulars (Dkt. No. 16) are DENIED.